Parker, J.
It is to be regretted, that in the determination of the very important principles involved in this case, we could not have had the advantage of a full court. Any decision we may now come to, short of unanimity, will settle, indeed, the rights of these parties, but not the law of the land ; and will leave the subject in some of the uncertainty which has heretofore attended it. Yet this circumstance diminishes the weight of responsibility attaching to each member of the court now sitting; for whilst he gives his present opinions, and affirms or reverses this judgment, of little consequence in amount, he feels that the precedent is not binding upon him as authority, and may, upon fuller consideration, be disregarded.
This controversy has arisen out of certain proceedings had under the charter of The James River and Kanawha Company, for the purpose of condemning a part *322 of the lands of the defendant, for the use of that company. The board of assessors, after considering the (luant^3r anc^ quality of the land to be condemned, and all other inconveniences resulting to the proprietor, and <( com^jnjng therewith a just regard to the advantages, which she would derive from the construction of the canal, for the use of which the land was condemned,” came to the conclusion that she would sustain no damages, and therefore they assessed none. This report being returned to the circuit su'periour court was disaffirmed, on the ground, that in every case arising under this charter, the proprietor is entitled to at least the full value of his land, whatever may be the advantages of the improvement ; and that the advantages spoken of in the 30th section of the act of 1831-2, ch. 82. for incorporating The James River and Kanawha Company, are not to be applied to the diminution of that value, but are only to be set off against the speculative damages arising from inconveniences, to which the proprietor might be subjected, other than the loss of the land; that the advantages to the owner of the land, to be considered by the assessors, are to be special and exclusive advantages to the lot, parcel or tract of land, whereof a portion is condemned, and not advantages of a general character', shared by the owner in common with others using or having it in their power to use the canal, for the transportation of their produce; and that if these exclusive and special advantages were equal to the speculative inconveniences, they should be made to balance each other; if the inconveniences were greater, the excess should be added to the value of the land; but if the advantages were greater than the inconveniences, no deduction should on that account be made. This I take to be the meaning of the instructions given by the court to the second set of assessors appointed by its authority, under which they gave damages to the proprietor to the amount of 350 dollars.
*323 The instructions of the court, then, affirm these propositions : 1. That, in every case of land condemned for the use of the company, the proprietor is to be compensated for the full value of the land, without regard to advantages of any character or description. 2. That the appreciation of the value or price of the land by the greater facility of navigation, is only an ideal or speculative advantage. 3. That the inconveniences arising to the proprietor, from the additional fencing that may he required, from the overflow of his other land, from one portion of it being cut off from the other, or from any other cause, independent of the value of the land taken, as affected by the position and form in which the condemned portion may be located,—are also speculative inconveniences, and being of the same character as the advantages, namely, loth speculative, and having no certain standard by which either can be measured, they may balance each other, if supposed to be equal; but if unequal, the excess of speculative inconvenience may be added to what is termed the certain and real damage, but not e converso (for so I clearly understand the instructions). And lastlij, that the use of the canal, and the additional value given to the remaining part of the tract or parcel of land of which a portion is condemned, is not an advantage contemplated by the legislature to be taken into computation; or if contemplated, it would be a violation of that provision of the constitution of Virginia, which declares, that the legislature “ shall not pass any law, whereby private property shall be taken for public uses without just compensation.”
Much of this appears to me to be inconclusive, and unwarranted by the terms or spirit of the law in question. I do not, for example, perceive, why the additional fencing which a proprietor may find it necessary to make, or the overflow of his land by leaks or drains, or its separation into distinct parcels connected by bridges at a distance from each other, or the annoy *324 anee to his property by boatmen and others,—should . „ . r f . J . . . be called speculative inconveniences, and not real ones. Nor can I comprehend, why the use of the canal, and .. . , , the additional value given to a lot or parcel ot land, j-,e termed speculative advantages only: nor why, ¿f speculative inconveniences exceeding advantages said to be of the same character, are allowed under this law to be added to the value of the land condemned, the excess of advantages ejusdem generis shall not be taken from that value. These advantages and inconveniences, though not certain, are appreciable, and admit of as much accuracy of valuation as annuities, or many other subjects which the law notices; and if we exclude them because the assessors cannot precisely estimate their amount, we shall go near to annul the law. The advantages derived from the structure of the canal, from the embankment of stone or earth, or the probable conversion of marsh into arable land, which the able counsel for the defendant admitted might be taken into the estimate, and set off against the value of the land (but which the instructions of the court exclude), are, it seems to me, as speculative as that which he attempts to get rid of. If, by the use of a road or canal, produce can be sent to market, after paying the tolls exacted, for a less sum than it could otherwise be carried, the difference will, in general, enhance the value of the land, in a ratio which can be easily estimated, and is a positive advantage, as little speculative, ideal, or contingent, as any other which the assessors could be called upon to value. In human affairs, approximation to justice is all we can in general hope to attain.
After mature consideration, it occurs to me, that the only difficulty in this case is in ascertaining the true meaning of the several acts of assembly respecting The James River and Kanawha Company. If, in doing so, we come to the conclusion that the legislature meant to authorize the assessor’s, in estimating the damages to the *325 owner of the land, to combine therewith the advantages derived from the use of the improvement m the enhancement of its value, such a provision cannot, in my judgment, be objected to on the ground of unconstitutionality. It is conceded, on all hands, that the legislature may take private property for public uses; and it is equally dear, both on principles of natural law and constitutional inhibition, that it cannot be taken without making just compensation to the owner. “ This compensation” (says judge Carr, in Crenshaw v. Slate River Co. 6 Hand. 264.) “must always be made under some equitable assessment established by law.” But it need not be made in money, nor in any thing admitting of certain, precise and invariable value. It consists, as Blackstone expresses it (1 Comm. 139.), in giving to the individual “ a full indemnification or equivalent for the injury sustained.” The very word compensation means amends, recompense, or counterbalancing advantage; and for sucb equivalents, private property is every day, in the form of taxes or otherwise, taken for public uses. Now, to carry a road or a canal from one’s usual market to his door, and thereby to double the value of his remaining land, is as much an equivalent, recompense or indemnification, as if the value of his land were paid for in money. Should the value exceed this recompense, it is paid for. Should it fall short of it, he gets all the additional benefit, without the loss of a cent’s worth: and herein consists the preeminent advantage to the riparian proprietors; for in ninety-nine cases out of a hundred, they receive more than a compensation for the strip of land condemned, even should they not be paid a dollar in damages.
But, it is said, “this is an advantage not exclusive to the proprietor of the land a portion of which is taken, but shared equally by the owners of farms near by and at a distance, and throughout the valley of the James River, who have contributed little or nothing to *326 the improvement; and, therefore, to the extent that any deduction is made from, the real value of the land condemned, on account of any supposed advantage of im- . . . . , , proved navigation, so much is taken from the proprietor and appropriated to the use of others, without consideration and against all constitutional principles.” I do not perceive how this conclusion is fairly drawn from the premises. It is true, the law may operate unequally, as most human laws do. One class of persons may receive equal benefits with another, and may contribute less, or lose nothing. But so long as the other class receives a fair equivalent for losses, how can it be said, that the property of those who belong to this class is taken without consideration, and in violation of the constitution ? The simple fact is, that they get the worth of their property, whilst others, who lose no land, share the benefit. This is inequality, but not injustice. It is the case of the labourers in the vineyard, who bore the burden and heat of the day, but received only the penny which was given to the eleventh hour man. No wrong is done if the riparian proprietors are justly compensated, although all -the inhabitants of the James River valley partake of the bounty of the state. And, as I have already hinted, this inequality is, in a great majority of the cases, more imaginary than real, since the benefits so far exceed the losses, and are so much more certainly experienced by those through whose lands the canal is carried, as to make the exceptions a matter of little consequence in the estimation of a wise legislature establishing a general system of internal improvement. Inequalhy, and even injustice, is incident to every imposition of burdens, for the use of the public; but these are considerations more properly addressed to the legislator than to the judge, except as they may aid in the true interpretation of the statute.
I repeat it, then, that the true inquiry here is, to ascertain the meaning of the legislature, when it directed *327 tba.t lands should be condemned for the use of The James River and Kanawha Company, and how the damages should be assessed. To enable us to do this, we must recollect a few general rules of construction not mapplicable to the present case. One is, that we must construe statutes according to the plain and popular meaning of the words, it being safer to adopt what the legislature has actually said, than to suppose what it meant to say. Another is, that wm should take all laws which relate to the same subject, whether expired or superseded, as one system, to be construed consistently. And a third is, to construe a statute made pro bono publico, in such a manner that it may, as far as possible, attain the end proposed, without inconvenience, or danger of thwarting the policy which gave it birth. Pierce v. Hooper, Stra. 258. New River Co. v. Graves, 2 Vern. 431.
The 30th section of the act of incorporation of the company, directs, that in assessing damages to the proprietors of the land condemned, the assessors shall “ take into consideration the quantity and quality of the land to be condemned, the additional fencing which will be required thereby, and all other inconveniences which will result to the proprietor from the condemnation thereof; and shall combine therewith a just regard to the advantages which the owner of the land will derive from the construction of the road or canal, for the use of which the land is condemned.” This law must be considered in connexion with others on the same subject. The state, in establishing a general system of internal improvement, meant, undoubtedly, to adopt a uniform rule in the assessment of damages to individuals. By a former law in relation to this same company (Acts of 1819-20, ch. 5G. § 3. 4.) lands were to be condemned, in the manner prescribed by the act entitled “ an act prescribing certain general regulations for incorporating turnpike companies,” for the condemning land for the use of any turnpike road, varying the forms of the pro *328 ceedings as,the nature of the case might require. And by the general law concerning turnpike companies, 2 Rev. Code, ch. 234. § 8. the valuers were directed to combine with their assessments of the value of the land, an(j inc0nveniences resulting thereto from the opening of the road, “ a just regard to the advantages which the owner of the land will derive from the opening of the road through the same.” The same policy was afterwards extended to rail roads by several acts, and to all the roads of the country, by the statute of the 20th January 1834, which enacts, that whenever a jury shall be iinpannelled, according to the direction of the second section of the road law, the sheriff shall, in addition to the charge prescribed by that section, “ charge the said jury to combine with the estimate of the damage to be occasioned by opening the road, a just regard to the advantages which the proprietor and tenants will derive from the passing of the same through their lands.” These are all acts in pari materia, and to be construed as one law. Whatever rule the legislature intended to adopt in the one case, it meant to prescribe in the other. And, therefore, I do not think the criticism of the counsel on the words “ construction of the road or carnal” (found in the original act of incorporation of 1831-2, ch. 82. § 30.) by which he would confine the advantages to be set off, to those arising from the structure of the improvement, a sound one. That change of phraseology was manifestly used as synonymous with opening or passing through; the terms employed in the other acts.
What was then the obvious meaning of the legislature, collecting it from the language it has employed, without indulging in refinements, or resorting to presumptions, or being guided “ by the crooked cord of discretion,” which has so often induced a departure from the plain and literal construction of statutes ? The advantages derived to the owner of the land condemned, are to be estimated, considering him as owner of *329 that land, and no other. These advantages must accrue to him, in the character of proprietor of the land through which the road or canal passes, and in no different character. All advantages are to be considered, which are in their nature appreciable ; for the law makes no reservation, restriction or exception. How can we say, that the legislature meant only a certain kind of advantages, when their language has excluded none ? Is the use of the canal, and the additional value given to land along its immediate line, no advantage ? Then the assessors will allow nothing for it. Is it a great, obvious and appreciable advantage ? Then, by what rule of construction shall we exclude it from their estimate ? It appears to me, that this was the chief advantage within the legislative contemplation ; for, in the greater number of cases, it is the only one. In the case of common roads, or of railroads, what possible advantage does the owner of the land through which they pass derive from them, except from their use ? And so of turnpike roads and canals, if you exclude this element of benefit, the law, framed with so much care, and applied to every case of internal improvement by roads and canals, might as well be repealed ; for little is left on which it is to act.
Plausible objections to this construction may bo made, and have been made, by stating hypothetical cases of hardship and inequality. I have already said, that no general system of legislation is exempt from such imputations; but I cannot admit that this is a reason for rejecting the plain words of a statute. This law seems to me to be as little obnoxious to the objection, as most others of a similar character. When it is said, that the riparian possessors will thus “ be made to pay a very great portion of the cost of making a general improvement, against their consent and without any considerationor that, upon the same principle, a charge might be levied in favour of the company for *330 the excess of value, and thus all the advantages held out to the proprietors be extinguished, and they alone be excluded from the-benefit of the improvement; I cannot perceive the force of the objections, applied to actuaj faC(;S) and to the known condition of the country. The slips of land condemned would not pay a hundred thousandth part of the cost of the improvement ; in a vast majority of cases they bear a very inconsiderable proportion to the enhanced value of the remaining land; and if the improvement was taking another direction, the proprietors would, with few exceptions, gladly give them to the company to obtain the location. The legislature adapts its laws to the state of things as'known commonly to exist, and not to imaginary or rare cases of hardship. The system deliberately adopted has hitherto worked well; and if we change it now, and give to the owner of the land, in every instance, the full value of his land, enhanced in value by the actual location of the road or canal through it, without abatement, 1 very much fear a serious blow will be given to the cherished policy of the state.
There is only one consideration more, to which I shall advert. The 9th section of the act of 1819-20, ch. 56. for clearing and improving the navigation of the James River, and for uniting the eastern and western waters by the James and Kanawha, has been relied on to prove, that in no case can the whole saving of the cost of transportation be taken into consideration, as an advantage to the riparian owner. That section contains a pledge, on the part of the legislature to the company, that it will authorize tolls to the amount necessary, with other resources, for the payment of the interest on the money expended on the work; provided that such additional tolls should not exceed one third of the saving of transportation, taking an average of three years. I construe this proviso as limiting the pledge of the state to the company, but in no wise affecting the present *331 question. IF it could be taken as a limitation of the power of the legislature over the amount of tolls, still it would not prove that the excess of benefit derived to . the proprietor of lands through which the improvement passes, may not be constitutionally set off against the value of the part condemned. If the legislature, for the general benefit, had given a pledge to abolish all tolls, the proprietor of the land condemned might complain of the inequality, but of nothing more.
Upon the whole, I am of opinion, that the judgment should be reversed, and the first assessment confirmed.*
Brockenbrough, J.
The question before us is, what is the proper construction of the act of assembly which directs the assessors “to ascertain according to the best of their judgment the damages which the proprietor of the land will sustain by the condemnation thereof for the use of the company.” The constitution declares, that “the legislature shall not pass any law whereby private properly shall be taken for public uses without just compensation.” The legislature must have lmd this excellent provision in their view, when they granted the new charter in 1832. I consider it to' be the duty of the court to look on that provision as their best guide in the construction of the charter. Endeavouring to keep it in view, I am happy to say, that, *332 according to my strongest conviction, the legislature have not deviated from it. I proceed to state the construction which in my opinion must be given to the , Charter.
'j'^g 30th section of the act of 1831-2, ch. 82. declares, ^at the valuers of the land, in the performance of their duty, “shall take into consideration the quantity and quality of the land to be condemned, the additional fencing ■which will be required thereby, and all other inconveniences which will result to the proprietor from the condemnation thereof A Not only the land itself to be condemned shall be valued, but the inconveniences which seem clearly to result from the seizure of the property are also to be valued. The additional fencing is the only one specified, but there are others. One palpable inconvenience is the leakage of the canal, which renders it necessary for the proprietor to cut ditches and drains to carry oif that water from his arable land : another is, the being compelled to pass the canal from one part of the farm to another, at one or two points only, whereby his servants and teams will be subjected to greater labour and loss of time, than they would be subject to, if they could' go as they were accustomed, by the ways which convenience had previously laid out for them. There are many other such inconveniences, the value of which may be ascertained by those who have a view of the ground on which the canal runs. These inconveniences, incident to the condemnation of the land, are all local in their character. The damages to be given for them attach to the owner, as owner of that particular tract, parcel or piece of land, which is taken from him without his consent.
The law proceeds to say, that the valuers “ shall combine therewith a just regard to the advantages which the owner of the land will derive from the construction of the road or canal, for the use of which his land is condemned.” What is the character of the advantages to *333 which a just regard is to be had ? It is, the advantages to the owner of the land. What land ? That on which the canal is to be constructed. If the same proprietor owns another tract or parcel of land at the distance only of half a mile, but separated from the canal tract by the land of another owner, the advantages which he will derive from the navigation as to that land, are not to be taken into consideration, because it is not the land on which the canal is constructed. The advantages derived to the owner from the improvement are as great, or almost as great, on account of that tract, as of the canal tract, if the two tracts are of equal size and fertility; but those advantages are not to be valued, by the very words of the act. Yet it is an advantage to him, and if all advantages conferred on him are to be valued and charged to him, this advantage should be so valued and charged. There are some advantages, then, which are to be excluded from the view of the valuers. What, then, are the advantages to be valued ?
As the land which is condemned is itself to be valued according to quantity and quality, and the inconveniences to be valued are incidental to the condemnation, and local in their character, so it would seem, that the advantages to be valued are such as are incidental to the condemnation, and local in their character. The advantages are placed in contrast with the inconveniences; they are both of like character. There may be many such : take, for example, the cases put by the counsel. The digging of the canal may drain a marsh for the proprietor; the walls of the canal may give to the proprietor a line of permanent fencing which will, save to him a great deal of the expense of inclosing. There may be many others apparent to those who go upon the land. Whatever advantages the construction of the canal gives to him as owner of the particular tract, piece or parcel of land, on which it is constructed, shall be justly regarded, and shall be combined with the incon *334 veniences for which the damages are to be assessed; and the value of these advantages, when ascertained, may be deducted from the value of the land condemned, - . and or the incident inconveniences.
j)oes qle charter contemplate that the assessors shall charge to the riparian proprietor the value of the advantages derived to him from the improvement of the navigation ? I think not. I admit that these advantages may be very great, and that their value is ascertainable. But they are not advantages peculiar to him. On the contrary, they are common to him with all the rest of the inhabitants along the whole line of the improvement, who are within its influence. From Richmond to the Ohio, .every man (whether his lands touch the canal or road, or not) who will be enabled to increase his products by turning more land into cultivation, or by importing with greater ease and cheapness fertilizing minerals and other manures, who will be induced to open new mines or quarries, who will be enabled to carry his increased productions to market, and to bring from market his supplies, with greater ease and less expense,— will be benefited, if the canal and road should get into successful operation. Indeed, these advantages are the very objects which the legislature had in view in granting the charter. They are general advantages. To the great mass of that community, to ninety-nine out of a hundred, they operate, and are intended by the legislature to operate, as a benefit, without requiring them to pay the price of the construction. Shall this benefit be withheld from the hundredth ? Shall it be withheld from him, unless he will make compensation for it different from all the rest ? This could not, I think, have been the intention of .the legislature. It could not have intended to authorize the company to seize on and sequester the property of an individual, and under the pretext of making him a compensation for that property, to claim a set-off for a general advantage, which will deprive him *335 of the just compensation intended by the constitution. It is not credibie, in my opinion, that ihe legislature intended to compensate the riparian proprietor for the land taken for public uses, by the value of the real or supposed advantages derived from the improved navigatiou, when those same advantages were conferred freely on all others, without being looked upon as a compensation.
For these general advantages conferred on the community, the company has a separate and sufficient consideration. That consideration is the receipt of the tolls from all those who navigate the river. In proportion to the extent of these general advantages, is the compensation increased. If the individuals on the line of the improvement increase their products and their trade, all this increase produces new advantages to the company, by increasing its tolls. This is its compensation for all its outlay. That outlay consists not only of money paid for labour, materials and services, but of money paid for land on which to construct its improvements. If, then, it obtains a consideration or compensation for the general advantages which it confers on the country, why should it expect another consideration from the landholders, whose lands it takes ?
But even if there were no tolls, or if the tolls were surrendered, and the navigation thrown open to the public, still I should think, that the riparian proprietor could not be required to pay for the general advantages resulting from the improvement. His land is taken from him without his consent, and for that he is entitled to just compensation. The advantage which he obtains from the improved navigation is not of his own seeking; he obtains it from the public legislation, pursuing the public policy of the country. Obtaining it fairly in that way, why should he be deprived of it? Why should he pay for an advantage which is in some sort forced upon him by the public, and which it confers on him, *336 not with the particular view of benefiting him, but for its own wise purposes ?
With respect to the particular case under considera- . , tion : By the report of the board of assessors, which was ge). ^y tfje cour|;} the proprietor of the land condemned was adjudged to receive no damages. It seems from the report, that the land was valued by them : but the special inconveniences to the proprietor seem not to have been valued; or rather, the agreement of the company to supply the proprietor with conveniences equivalent to her inconveniences, was taken as a sufficient compensation for those inconveniences, and then the advantages, not specified, were held sufficient to counterbalance the value of the land. These advantages, I ■ presume, are the general advantages resulting from the improved navigation. The report was rightly disaffirmed.
The judge then proceeded to supersede the board pro hac vice, and appointed other assessors in their stead, and gave them instructions.
The first part of these instructions is, I think, entirely correct. That part declares, that the advantages to be valued are to be of a character particularly and exclusively affecting the particular lot, parcel or tract of land whereof a portion is condemned, and not advantages of a general character, derived from the improvement in question, and which the proprietors share in common with all of the community affected by them.
The last part declares, that after the damages are assessed for the value of the land condemned, the special inconveniences to which the proprietor of the parcel of land is subjected, shall be estimated, and damages assessed for them; that the special advantages derived to the proprietor from the condemnation of his land shall be valued, and that that value may be set off against the damage assessed for the special inconveniences : if the special advantages are equal to the special inconveni *337 onces, then they may balance each other; but if the special inconveniences are greater than the special advantages, then the excess in the value of the inconveniences must be added to the damage assessed for the land.
There is one case which seems not to have been provided for by the instructions. Suppose the special advantages more than counterbalance the special inconveniences, can the excess of those advantages be set off against the damages assessed for the land ? It may perhaps be inferred, that the judge was of opinion, that such excess of advantage could not be set off against the damage for the land. If such was his opinion, I should probably differ from him in this particular; being of opinion, that the value of special advantages may be set off against the damages assessed for the land condemned, as well as for the incident inconveniences, and that the result, after that set-off, furnishes to the proprietor a just compensation for his land condemned. But although such inference may perhaps be drawn, yet the instructions do not in terms extend so far. The latter part of the instructions, as far as they go, is, I think, correct. I see no error in them, nor in the report of the substituted assessors, founded on them.
I am of opinion, that the judgment should be affirmed.
Tucker, P.
This case has been very justly said to be one of very great importance; and fully impressed with its magnitude, I have given to it my most earnest consideration. The result of my reflection is, that there is no error in the instructions of the circuit superiour court of which the plaintiffs in error can complain.
The constitution of Virginia, art. 3. § 11. has provided, that the legislature shall pass no law, “ whereby private property shall be taken for public uses, without just compensationand the naked question is, whether the general advantages of a public improvement, en *338 joyed by an individual in common with the rest of the community, are to be regarded as constituting that just compensation which the constitution enioins ? I am of . f opinion, that they are not.
It is obvious, as has been justly observed by my brother Parker, in the able opinion just delivered, that, in a vast majority of cases, the value of the land condemned for a public improvement will bear a very small proportion to the enhancement in the value of the remainder of the tract; I mean-an enhancement not arising from advantages peculiar to that tract, but extending to the whole community upon its line, and arising out of the salutary influence of improved facilities of transportation, upon the value of all the real estate within the circle of that influence. If, therefore, in a vast majority of the cases, the value of the condemned land will be exceeded by the enhancement of the residue, and if that enhancement is to constitute the compensation, then it is obvious, that, in a vast majority of cases, the constitution will have nothing to operate upon; and this great and important principle will be confined to the few solitary cases (if indeed any case shall ever exist) in which the proprietor of the condemned property does not derive from the public work, advantages of a general character, equivalent to the value of what is taken from him.
Moreover, it is obvious under this construction of the instrument, that its principle may be extended to a variety of other cases, so as to render this boasted provision of little or no value. Thus, it may be provided, that if ad acre of one man’s land is essential for the abutment of his neighbour’s milldam, it shall be condemned without compensation for its value, provided a jury shall believe the conveniences of the mill to the owner and his posterity, will more than equal the value of the portion of land taken from him. And so with respect to public roads and landings. So too, if a court *339 house is to be erected upon one’s land, two acres may 1 be condemned without the allowance of a cent, because the adjoining property is rendered more valuable for the establishment of inns, storehouses, and other like advantages. If such be the meaning of this clause of the constitution, “ it keeps the word of promise to the ear, but breaks it to the hope.” It is a mockery, instead of a wise, just and salutary safeguard of the rights of the people. The jus publicum, though an absolutely essential attribute of sovereignty, should be exercised by every wise and paternal government, with just respect to the rights of individuals. It is enough, that it deprives the citizen of his property without his assent: it is enough, that it deprives him of that monopoly, which might enable him to exact exorbitant terms for his property: it is enough, that it takes from him the privilege of bargaining for himself, and appoints others to bargain for him. It therefore makes compensation for -what it takes; it does not put a charge upon him which others do not bear; it aims to place the public burdens equally upon all, by paying the proprietor for that which is taken from him. This is the very object of the constitution. But this object is utterly frustrated, if private property is sunk, and its value extinguished, by setting off a part of those incidental advantages to which the owner is entitled in common with all others within the sphere of the improvement. He is not only deprived of the right of making the most of his monopoly, but his possession of property essential to the canal, which, according to the ordinary view of things, would give him great advantages, is actually converted to his loss. Pie is in a far worse condition than his neighbour who has not his advantages; for the neighbour enjoys all the benefits of the canal, and loses none of his land, while the owner pays, in the price of his land, for those advantages which others get for nothing. What benefit does the constitution, in this view, confer *340 on the owner of the land condemned ? What protection does it afford for his rights ? His situation is just the same as if the provision of the constitution had never been made. Without it, he would have enjoyed all the common advantages of the canal, and have lost his land: and under its protection, what more does he get ? Absolutely nothing. For while he enjoys the benefit of the public improvement, in common with his fellow citizens, he receives not a cent for the property taken from him.
The whole argument, in truth, appears to me to be founded in a want of due attention to the true meaning of the terms of the constitution. “ Compensation” means “ a recompense given for a thing received.” But the general advantages received by the public from a public improvement, cannot properly be said to be a “ recompense given” for the land, for they are equally conferred on those who lose no land. Neither,'indeed, are they gifts to any body. They are a mere incident, or accident, arising out of the existence of the improvement. They are like the benefit conferred on me by my neighbour, when he builds a merchant mill convenient to my barn. I am benefited, indeed, but that benefit, though conferred by him, gives him no claim against me. In the adventure, he has proceeded with a view to his own profit, not with a view to mine. The benefit I enjoy, I do not owe to his liberality. It is neither a gift ex mero motu, nor can it be tortured into a price given for what he has taken from me. It can create no debt; it can pay no debt. It can neither give a right of action for benefits conferred, nor can it give a right of set-off for damages done or property condemned. If it could give such right of set-off, it is not perceived why it should not give a right of action for the excess of the benefit over and above the value of the property taken. Nor can I imagine how the company is to compensate the defendant for her 350 dollars worth of land, by setting off *341 a claim for benefits conferred, which they never could enforce by suit, and for which they can have no pretence of claim, legal or equitable.
For these reasons, I am of opinion, that the instructions of the circuit superiour court did not trench upon the company’s rights, and were not too liberal to the proprietor. Whether the court has gone too far in allowing what are called “ the peculiar and exclusive advantages of the proprietor” to be set off, I do not think it necessary to decide. My impression, indeed, is, that although the value of the land condemned must be compensated, and cannot be extinguished by setting off any speculative advantages, because it is herein under the protection of the constitution, yet if incidental damage is done to the residue of a tract (such as the necessity of additional fencing, leakage of the canal, and the like), such incidental damage may be set off' by the incidental benefits which the residue of the tract may derive from the canal, other than those general benefits which are equally enjoyed by the whole community. For the right to compensation for those incidental damages, resting upon legislative grant, not upon constitutional provision, it was competent to the legislature to limit and qualify it, and to set off against them any incidental benefits, peculiar to himself, which the riparian proprietor derives from the improvement. I am of opinion that the judgment should be affirmed.
Judgment affirmed.

 Note by the judge. Since this opinion was delivered, I have seen the act of the 11th March 1837, prescribing general regulations for the incorporation of railroad companies. The clause respecting the assessment is in the same words with those used in former laws; but a proviso is added, “ that not less than the actual value of the land, without reference to the location and construction of the road, shall be given by the commissioners.” This shews, that without such a proviso, the actual value need not have been given, and that in the case of railroads the legislature in March 1837 changed its policy. Under this law the enhanced value is not to he given, but only the actual value without reference to the improvement. The office of a proviso is to limit and restrain general words used before.